**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Billy Breedlove, *et al.*, | ) | No. CV-09-8135-PCT-JAT |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| Wells Fargo Bank, N.A., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| | ) ) | |

Defendants Wells Fargo Bank, N.A. (Doc. 58), Arch McDonald (Doc. 59), and Mark Bridgewater (Doc. 60) seek to dismiss Plaintiffs' Second Amended Complaint (Doc. 56). For the following reasons, the Court grants each Motion.

**I.    Background**

In December 2005, Plaintiffs Billy and Diana Breedlove purchased real property in Taylor, Arizona. They borrowed $281,250 from the United Federal Bank of Indianapolis to finance the property. The loan included a promissory note and a deed of trust, which named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. Wells Fargo, doing business as America's Servicing Company, became the servicer of Plaintiffs' loan. After the Plaintiffs defaulted on the note, the trustee initiated foreclosure. A trustee's sale was held on August 27, 2009, and the property at issue was sold.

///

**II.    Analysis**

    **A.    Legal Standard: Rule 12(b)(6)**

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Id*. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §1202, pp. 94, 95 (3d ed. 2004)).

This pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  A complaint that offers nothing more than naked assertions will not suffice.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949.  Facial plausibility exists if the party pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.** **Wells Fargo Bank's Motion to Dismiss Plaintiffs' Second Amended Complaint**

Plaintiffs assert six claims against Wells Fargo, ranging from fraud to a breach of fiduciary duty. The Court will discuss each cause of action separately.

**1.** **Wells Fargo Bank's Alleged Breach of Fiduciary Duties (Counts I, II, and III)**

In Counts I, II, and III, Plaintiffs allege that Wells Fargo breached fiduciary duties owed to them (Doc. 56 at 7-8). Although Plaintiffs have not specifically cited which Defendant breached these duties, the Court will analyze these allegations on their merits.

The Court must dismiss Plaintiffs' cause of action for breach because "the relationship between a bank and an ordinary customer is no more than that of debtor and creditor." *Bowman v. Wells Fargo Bank, N.A.*, 2010 WL 1408893, at *3 (D. Ariz. 2010). It is well-settled in Arizona that neither a mortgage lender nor its servicer owes a fiduciary duty to borrowers. *See Valley Natl. Bank of Phoenix v. Elect. Dist. No. 4*, 367 P.2d 655, 662 (Ariz. 1961) ("[T]he relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor."); *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992); *Urias v. PCS Health Sys.*, 118 P.3d 29 (Ariz. Ct. App. 2005) (holding that a debtor/creditor relationship does not create a fiduciary duty).

Further, nothing in the record suggests a special relationship existed between the parties. After purchasing a home, Plaintiffs needed a loan to finance their newly acquired property. Wells Fargo became the servicer of Plaintiffs' loan. Because the parties' relationship was exclusively limited to this financing, Wells Fargo owed no fiduciary duty

- 3 -

to Plaintiffs. As such, the Court will dismiss this cause of action for failure to state a claim upon which relief can be granted.

### 2. Wells Fargo's Alleged Violation of the Fair Debt Collection Practices Act (Count I)

In their second claim for relief, Plaintiffs allege that Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA") by failing "to provide the name and address of the original creditor" and "obtain and mail verification of the debt to Plaintiffs." (Doc. 56 at 7, ¶ 3). The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA restricts debt collectors from making false or misleading representations or using unfair collection methods. 15 U.S.C. § 1692(e), (f). Debt collectors must also provide certain written information concerning the debt collection. 15 U.S.C. § 1692(g).

The Plaintiffs' claim necessarily fails because Wells Fargo is not a debt collector under the FDCPA. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

"The activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." *Williams v. Countrywide Home Loans*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007); *see also, Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); *San Diego Home Solutions, Inc. v. Reconstruct Co.*, 2008 WL 5209972, at *1 (S.D. Cal. 2008). Applied to the current facts, Wells Fargo is merely the servicer of Plaintiffs' loan. Such a responsibility does not confer liability under the FDCPA. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Accordingly, dismissal is appropriate because Plaintiffs cannot sustain a claim for relief

under the FDCPA.

### 3. Wells Fargo's Alleged Violation of the Real Estate Settlement Procedures Act (Count II)

In their third claim for relief, Plaintiffs allege section 2605 violations of the Real Estate Settlement Procedures Act ("RESPA"). Specifically, Plaintiffs allege that Defendants "breached their duty to provide a written acknowledgment, make appropriate corrections to Plaintiffs' account, and [provide] written clarification regarding Plaintiffs' dispute." (Doc. 56 at 8). The Court finds that Plaintiffs have not stated a claim for relief under Count III.

Section 2605 of RESPA requires a loan servicer to provide a written response to a borrower's qualified written request. 12 U.S.C. § 2605(a)(1). This section of RESPA is intended to provide borrowers with greater access to account information and increased consumer protections. *See* 12 U.S.C. § 2601(a). As a threshold determination, a court must first determine whether a borrower's inquiry is a qualified written request. 12 U.S.C. § 2605(e)(1)(B). The request must be: 1) a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that 2) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and 3) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. *Id.*

Furthermore, the qualified written request must be related to the servicing of the loan. *See* 12 U.S.C. § 2605(e)(1)(A). Servicing includes "any scheduled periodic payments from a borrower" or the "making of . . . payments of principal and interest . . . ." 12 U.S.C. § 2605 (i)(3).

Finally, a plaintiff must allege actual damages resulting from a violation of section 2605. 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: In the case of any action by an individual, an amount equal to the sum of . . . any actual damages to the borrower as a result of the failure."); *Collier v. Wells Fargo Home Mortg.*, 2006 WL

1464170, at *3 (N.D. Tex. 2006); *Hepler v. Washington Mut. Bank, F.A.*, 2009 WL 1045470, at *4-5 (C.D. Cal. 2009).

The Second Amended Complaint does not provide Plaintiffs with any basis for relief. Defendants allegedly failed to "provide a written acknowledgment, make appropriate corrections to Plaintiffs' account, and [provide] written clarification regarding Plaintiffs' dispute" after they submitted a Notice of Dispute. (Doc. 56 at 8). Even construing the facts most favorably to Plaintiffs, they have failed to allege how Wells Fargo's breach impacted the foreclosure. Specifically, they do not claim that Wells Fargo's breach affected their decision to pay their outstanding loan payments, created confusion as to the amount they owed, or even whether this alleged breach resulted in identifiable harm. Instead, Plaintiffs rely upon conclusory statements to demonstrate a RESPA violation. Without a sufficient factual basis, Plaintiffs' claim cannot survive dismissal under the *Twombly* pleading standard. Therefore, dismissal is appropriate because no relief is available under RESPA.

### 4. Plaintiffs' Undue Stress and Financial Hardship (Counts III and IV)

In Counts III and IV of Plaintiffs' Second Amended Complaint, they allege Defendants' misconduct has caused them "undue stress and financial hardship." (Doc. 56 at 8-9). Plaintiffs have allegedly struggled to pay their bills and have suffered severe mental and emotional stress. (Doc. 56 at 9). These statements do not state any basis for relief because they are merely allegations of damages. As such, the Court must dismiss these claims.

### 5. Wells Fargo's Alleged Fraud (Count V)

In their fifth claim for relief, Plaintiffs assert that Wells Fargo is liable for fraud. They specifically allege that Sylvia Harding and/or Mark Bridgewater, who represented Wells Fargo, attempted to remove them from their property through "fraudulent inducement." (Doc. 58 at 9). Wells Fargo, "led [them] to believe that their home . . . was being taken from them."

Plaintiffs' allegations of fraud are insufficient because they have not properly pled as

to the circumstances involving the claim. In order to prevail on a fraud claim under Arizona law, a claimant must show:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the representation's falsity or ignorance of its truth; 5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) the hearer's reliance on its truth; 8) the right to rely on it; and 9) his consequent and proximate injury.

*Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982); *see also Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000) (citing *Echols*). Certain elements of fraud claims carry a higher standard of pleading under the Federal Rules Civil Procedure: "In all averments of fraud or mistake, *the circumstances constituting fraud* or mistake shall be stated with *particularity*. Malice, intent, knowledge, and other *condition of the mind* of a person may be averred *generally*." Fed. R. Civ. P. 9(b) (emphasis added). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)

"To allege fraud with particularity, a [claimant] . . . must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Falsity may be established through inconsistent contemporaneous statements or information made by or available to the defendants, but such statements are not required. *Id.* at 1549. Falsity may also be established through allegations of circumstantial evidence. *See Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997).

Plaintiffs' allegations were not made with particularity; rather, they amount to mere conclusory statements and general averments of fraud. Plaintiffs assert that "[Defendants] attempted to remove [them] from their residence through fraudulent inducement." (Doc. 56 at 9). They have failed to include factual allegations describing the circumstances and methods of Defendants' purported fraud. Further, the Complaint fails to specify how any of Defendants' representations constituted fraud. Plaintiffs rely upon the claim that "[they] were led to believe that their home . . . was being taken from them." This assertion cannot

be sustained under Rule 9(b). Plaintiffs are simply reciting conclusory language such as "fraudulent inducement" to state a claim for fraud. Moreover, the public record indicates that Plaintiffs' property was lawfully foreclosed. (Doc. 56, Exh. F and G). For these reasons, dismissal is appropriate because Plaintiffs have failed to plead their claim with any particularity.

### 6. Wells Fargo's Alleged Violation of RICO (Count VI)

In Plaintiffs' sixth claim for relief, they allege Wells Fargo's violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act through mail fraud. The elements of a civil RICO claim are: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity (known as "predicate acts") 5) causing injury of the plaintiff's business or property. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal citations omitted). "Illegal activities that constitute predicate acts for federal RICO liability are identified in 18 U.S.C. § 1961(1)." *Lacy v. County of Maricopa*, 2008 WL 312095, at 5 (D. Ariz. 2008). Additionally, a plaintiff must allege at least two of these predicate acts to demonstrate a pattern of racketeering. 18 U.S.C. § 1961(5).

The Ninth Circuit Court of Appeals requires plaintiffs to plead in accordance with Rule 9(b) when alleging RICO violations. *See Schreiber Dist. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) (fraud pleaded with sufficient particularity when four instances in which the scheme was furthered by use of the mails are specifically alleged). For allegations involving mail fraud, a plaintiff must "specify the time, place, and content of the alleged [misconduct]." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

First, Plaintiffs' Complaint fails to meet the threshold requirements for asserting a RICO violation. From the Complaint's bare assertions, the Court is unable to determine whether Defendants' alleged mail fraud actually involved two predicate acts. Second, even assuming two distinct predicate acts existed, Plaintiffs' claim fails to meet Rule 9(b) standards. Similar to Plaintiffs' previous allegations of fraud, they rely upon conclusory statements as their sole basis for relief. Plaintiffs do not specify when or even how the

Defendants committed mail fraud under RICO. Further, the Ninth Circuit has held that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Although this holding did not specifically apply to an alleged RICO violation, such instruction is relevant to the current facts. Plaintiffs provide no basis for determining how Wells Fargo committed mail fraud under RICO. For these reasons, dismissal is appropriate because Plaintiffs have not stated a claim upon which entitles them to relief.

> **7.** **Wells Fargo's alleged violations of 42 U.S.C. §§ 1981, 1983 (Count VI)**

In Plaintiffs' seventh claim for relief, they allege violations of both 42 U.S.C. § 1981 and § 1983. First, § 1981 "creates a cause of action only for those discriminated against on account of their race or ethnicity . . . ." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) (internal citations omitted). Because Plaintiffs' complaint does not cite any form of racial or ethnic discrimination, § 1981 is inapplicable to the current facts. Second, there are no factual allegations that Wells Fargo, or any of the Defendants, were "acting under color of state law" for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Various courts have held that the performance of bank functions do not constitute acts under color of state law within the meaning of § 1983. *See, e.g., Laird v. Tex. Commerce Bank-Odessa*, 707 F. Supp. 938, 940 (W.D. Tex. 1988); *Liberty Mtg. Banking Ltd. v. Fed. Home Loan Mtg.*, 822 F. Supp. 956, 960 (E.D.N.Y. 1993). Therefore, the Court will dismiss Plaintiffs' § 1981 and § 1983 claims.

### C. Arch McDonald's Motion to Dismiss Plaintiffs' Second Amended Complaint

Defendant Arch McDonald moves to dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted (Doc. 59). For the reasons that follow, the Court grants Defendant McDonald's Motion to Dismiss.

#### 1. Personal Jurisdiction

Defendant McDonald first argues that Plaintiffs have not met their burden for demonstrating the existence of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. *See, e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Fed. R. Civ. P. 12(b)(2)). When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)). Conflicts over statements contained in the plaintiff's and defendant's affidavits "must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). In the absence of an evidentiary hearing, the plaintiff only needs to make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

Because no applicable federal statute governing personal jurisdiction exists, Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995) (citing *Core-Vent Corp. AB v. Nobel Indus.*, 11 F.3d 1482, 1484 (9th Cir. 1993)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P.

4.2(a); *see also Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).[1]

The application of Arizona's long-arm statute to the current facts present some initial difficulties due to Defendant McDonald's status as an employee at America's Servicing Company (doing business as Wells Fargo). The Court's jurisdiction over Wells Fargo is uncontested. However, personal jurisdiction over corporate employees may not be based on the federal court's jurisdiction over the corporation itself, unless those individuals are engaged in activities that would also subject them to the application of the state's long-arm statute. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts . . . are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually."); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) ("Arizona's long-arm statute may, consistent with constitutional due process, allow assertions of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona."). Therefore, the Court must determine if Defendant McDonald possessed sufficient contacts with Arizona for purposes of personal jurisdiction.

The Court must first analyze whether it can exercise general jurisdiction over Defendant McDonald. A court may assert general jurisdiction over a nonresident defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050-51 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)); *see Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Defendant McDonald is a resident of Maryland and was served by mail in Frederick, Maryland (Doc. 59 at 1-2). Plaintiffs make no arguments that can sustain general jurisdiction. Although Defendant McDonald prepared and issued monthly mortgage statements, nothing in the

---

[1] Rule 4.2(a) provides, in pertinent part: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

record suggests that his work was exclusively limited to Arizona residents. The record also does not indicate that he worked in Arizona or possessed any ties to the state beyond his employment. Therefore, the record cannot sustain general jurisdiction over Defendant McDonald.

Because Defendant McDonald does not have substantial or continuous and systematic contacts with Arizona, the Court must determine whether he has sufficient contacts such that the exercise of specific jurisdiction would not offend the Due Process Clause. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Core-Vent*, 11 F.3d at 1485. The Ninth Circuit applies a three-prong test to determine whether a defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802. Under this three-prong test, specific jurisdiction exists only if: 1) the nonresident defendant purposefully directs activities or consummates some transaction with the forum of the plaintiff, or performs some act by which he personally avails himself to the privilege of conducting activities in that forum; 2) the claim arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Id.*; *see*, *e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d 414, 416 (9th Cir. 1997)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

The primary issue before the Court is whether Defendant McDonald purposely availed himself to Arizona through his workplace activities.[2] The Court must accept disputed allegations in the Complaint when analyzing questions of personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 800. Further, the Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. *Boag v. MacDougall*, 454

---

[2] The Court only needs to analyze the purposeful availment prong because Defendant McDonald's Motion is limited to this specific argument. Defendant McDonald makes no mention of the jurisdiction's reasonableness or whether the claim arises from his forum activities.

U.S. 364, 365 (1982) (per curiam). Despite this framework, Defendant McDonald argues that Plaintiffs have failed to come forward with facts supporting the exercise of personal jurisdiction. The Court disagrees that Plaintiffs have failed to meet their burden for establishing specific jurisdiction.

The Supreme Court held that a court may have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder*, 465 U.S. at 789-90 (adopting "effects test" for libel, invasions of privacy, and intentional infliction of emotional distress claims where the defendant's Florida conduct had "effects" in California, the forum state). Consistent with this precedent, the Ninth Circuit has held that a district court should apply different specific jurisdiction tests to contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether court has specific jurisdiction over the defendant, "[i]t is important to distinguish contract from tort actions"); *Ziegler*, 64 F.3d at 473.

In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects test" and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs state." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *see also Schwarzenegger*, 374 F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."). Under this test, a defendant purposefully directs his or her activity at a forum state where: 1) he or she commits an intentional act; 2) the act is expressly aimed at the forum state; and 3) the act causes harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder*, 465 U.S. at 789-90). Several Ninth Circuit courts have used this test to determine jurisdiction over civil RICO claims such as conspiracy. *See, e.g., Francis v. United States*, 2008 WL 4279692, at *11 (N.D. Cal. 2008).

The organization and vagueness of Plaintiffs' Complaint makes it difficult to analyze for purposes of personal jurisdiction. Defendant McDonald allegedly prepared and issued

monthly mortgage statements on behalf of Wells Fargo (doing business as America's Servicing Company), including Plaintiffs' mortgage loan. (Doc. 56 at 3). Defendant McDonald, along with Wells Fargo, allegedly committed mail fraud by attempting to "extort money" from Plaintiffs through these statements. (Doc. 56 at 3).

The Complaint is unclear as to what intentional act Defendant McDonald committed to meet *Calder's* threshold element. The Complaint does not allege that Defendant McDonald prepared the monthly mortgage statements incorrectly.[3] However, Plaintiffs were apparently "led to believe payment was going to the servicing agent ([America's Servicing Company]), when in fact . . . , payments were made to the 'Note Holder.'" (Doc. #56 at 3-4). This statement, along with Plaintiffs allegations against Wells Fargo, leads the Court to conclude that their claim fulfills the requirement that Defendant McDonald "intended to perform an actual, physical act in the real world . . . ." *Schwarzenegger*, 374 F.3d at 806.

The second *Calder* prong requires the intentional act to be "expressly aimed" at the forum. The Ninth Circuit has held that "something more than foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805, and that "something more means conduct expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 2010 WL 2135302, at *4 (9th Cir. 2010) (internal citations omitted).

In *Brayton*, Recordon & Recordon, a small San Diego-based law firm, unlawfully used copyrighted materials on its website belonging another law firm located in the Northern District of California. *Id.* at *1. The plaintiff, Brayton Purcell, sued in the Northern District, even though Recordon's principal place of business was located in San Diego County and the firm did not actively seek clientele in northern California. *Id.* The Ninth Circuit held,

---

[3] Plaintiffs' response to Defendant McDonald's Motion to Dismiss (Doc. #61) contains no new arguments in support of jurisdiction. (*See* Doc. #61 at 1 ("The issues raised in these motions have already been raised and responded to by Plaintiffs in prior responses. Refer back to Dkt. No. 28; Dkt. No. 44; and Dkt. No. 49.")). Therefore, the Court is forced to determine the validity of jurisdiction from prior filings.

that because "Recordon knew of Brayton Purcell's existence, targeted Brayton Purcell's business, and entered direct competition with Brayton Purcell," the firm's conduct was expressly aimed at the forum. *Id.* at *4.

Similar to *Brayton*, Defendant McDonald would have been aware of Plaintiffs' location. The mortgage records clearly indicate Plaintiffs' property financing in Taylor, Arizona. *(See, e.g.*, Doc. 58, Exh.1 at 1). Although it is unclear who sent the mortgage records (either McDonald or Wells Fargo), this precise manner of shipping will not be determinative under *Calder*. Instead, if the Court assumes Plaintiffs allegations to be correct, the nature of Defendant McDonald's fraudulent activities would require an express aim. This conduct is not akin to a passive display of information. *See, e.g., Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) ("[W]e reject . . . any contention that a passive website constitutes express[ ] aiming."). Instead, Defendant McDonald would have not only known the mortgage record's destination, but also directed the record in some capacity to Arizona. For this reason, the current facts support *Calder's* second prong.

Finally, the third *Calder* prong is not in question. This element "requires that [Defendant McDonald's] conduct caused harm that he knew was likely to be suffered in the forum." *Brayton*, 2010 WL 2135302, at *6. Foreseeability is a non-issue because the records in question solely involve Plaintiffs' property in Taylor, Arizona. Any activity by Defendant McDonald would have implicated these mortgage payments. Accordingly, the Court possesses specific jurisdiction over Defendant McDonald.

### 2. Motion to Dismiss for Failure to State a Claim

Defendant McDonald asserts that dismissal is appropriate because Plaintiffs have not stated a claim upon which relief can be granted. (Doc. #59 at 2-3). Similar to Plaintiffs claims against Wells Fargo, mere conclusory allegations of fraud are insufficient. *Moore*, 885 F.2d at 540. "To allege fraud with particularity, a [claimant] . . . must set forth an explanation as to why the statement or omission complained . . . was false or misleading." *In re GlenFed*, 42 F.3d at 1548. Falsity may be established through inconsistent contemporaneous statements or information made by or available to the defendants, but such

statements are not required. *Id.* at 1549. Falsity may also be established through allegations of circumstantial evidence. *See Cooper*, 137 F.3d at 625.

Here, Plaintiffs have again failed to particularly plead any facts supporting the elements of mail fraud. Plaintiffs' allegations against Defendant McDonald are limited to the following three paragraphs of their Second Amended Complaint:

> 3. Wells Fargo, *Arch McDonald*, John Stumpf and/or their representative(s), dba A.S.C., from a location in the vicinity of Fort Mill, South Carolina visited into Fort Mill, SC and / or 1 Home Campus, Des Moines, IA. 50328-0001 via the United States Mail Service, committed mail fraud on or before April 3, 2009, and May 8, 2008, this is a violation of 18 U.S.C. § 1341 . . . .
>
> 4. Wells Fargo, *Arch McDonald*, John Stumpf and/or their representative(s), prepared and issued documents titled "monthly mortgage statement" from ASC, which [P]laintiffs were led to believe payment was going to the servicing agent (ASC), when in fact and discovered later, according to the contract (Original Note), payments were made to the "Note Holder." The [D]efendants acted in total disregard to the truth and material facts with the intention that it be acted upon by Plaintiffs.
> . . . .
>
> 6. Wells Fargo, *Arch McDonald*, John Stumpf and/or their representative(s), are in violation of Arizona's doctrine of common law fraud, "Plaintiff is entitled to recovery of "actual damages," which includes consideration paid in the contract and out-of-pocket expenses," as articulated by the Arizona Court of Appeals . . . .

Doc. 56 at 3-4 (emphasis added). Plaintiffs allege that Defendant McDonald committed fraud by mailing account statements to Plaintiffs. They do not state what was false about the statements or even why they were false. Plaintiffs possessed an existing mortgage with Wells Fargo, and as such, Defendant McDonald had a basis for sending statements involving their property's financing. Plaintiffs merely rely upon conclusory statements, absent any factual basis, to support their claim against Defendant McDonald. Plaintiffs' claim is neither plausible on its face nor rises beyond a speculative level. *See Iqbal*, 129 S.Ct. at 1949. Because Plaintiffs have failed to plead with particularity under Rule 9(b), the Court grants Defendant McDonald's Motion to Dismiss (Doc. 59) pursuant to Rule 12(b)(6).

**D.    Mark Bridgewater's Motion to Dismiss Plaintiffs' Second Amended Complaint**

Plaintiffs assert a "fraudulent inducement" claim against Defendant Mark

Bridgewater. Like Plaintiffs' claims against both Wells Fargo and Defendant McDonald, dismissal is appropriate because their claim does not entitle them to relief. Specifically, they have failed to plead fraud with particularity.[4]

Plaintiffs allege that Defendant Bridgewater and other representatives of Wells Fargo "attempted to remove [them] from their residence through fraudulent inducement." (Doc. 56 at 8). Their allegations against Defendant Bridgewater are solely limited to this specific count. Similar to Plaintiffs other allegations of fraud, they have failed to particularly plead any facts supporting the elements of fraud. Plaintiffs have not alleged the content or falsity of any statements made to them. They have even failed to plead the methods in which Defendant Bridgewater fraudulently induced them to leave their residence. Specifically, Plaintiffs have not cited any time or place that these fraudulent acts took place. Indeed, the public record indicates that a trustee's sale was held on August 27, 2009, and the property at issue was sold. (Doc. 58, Exh. G at 1-2). Plaintiffs' claim is not plausible and does not rise beyond a speculative level. Accordingly, the Court grants Defendant Bridgewater's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 60).

## III.    Conclusion

**IT IS ORDERED** that Wells Fargo Bank's Motion to Dismiss (Doc. 58), Defendant Arch McDonald's Motion to Dismiss (Doc. 59), and Defendant Mark Bridgewater's Motion to Dismiss (Doc. 60) are GRANTED.

DATED this 27th day of July, 2010.

_____
James A. Teilborg
United States District Judge

---

[4] *See* pp. 7-8, 16 for the relevant legal standard for fraud and pleading fraud under Rule 9(b).